UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Marie Carmo Gruhler

       v.                              Civil No. 17-cv-208-JD
                                       Opinion No. 2017 DNH 252
Nancy Berryhill, Acting
Commissioner, Social Security
Administration


O R D E R

Marie Gruhler seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability benefits under Title II the Social Security Act. Gruhler moves to reverse on the grounds that the Administrative Law Judge ("ALJ") erred in weighing opinion evidence, in considering her impairments, and in failing to find that she is disabled. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted).

## Background

Gruhler applied for social security benefits in June of 2014 when she was sixty-one years old. She completed the twelfth grade in school and had previously worked as an electronics inspector at Sylvania.

After a fall in August of 2012, Gruhler was examined in the emergency room at Concord Hospital. Despite tender spots along her spine, Gruhler's strength, sensation, and gait were normal. A CT scan and xrays showed were negative. A second review of her xrays showed "a non-displaced proximal scaphoid wrist fracture."

Gruhler began physical therapy in September of 2012, because of constant head and neck pain, back pain, and short-term memory problems. At an appointment in October of 2012, Gruhler's right ankle was swollen after a two-mile walk. Gruhler was referred to a foot doctor because of right ankle pain.

Dr. Ronald Resnick noted swelling in Gruhler's foot and ankle. Gruhler explained that when she hurt her wrist in the August fall she also injured her ankle. Dr. Resnick noted that x-rays did not show a fracture but put Gruhler in a removable cast boot. A CT scan of Gruhler's ankle on October 11, 2012, "showed a tiny avulsion type fracture at the tip of the lateral malleolus with focal soft tissue swelling." At subsequent appointments Gruhler continued to complain of right ankle pain.

Gruhler also began physical therapy for her ankle. The physical therapist noted that Gruhler had exceeding hypersensitivity in the ankle and was concerned about potential Complex Regional Pain Syndrome ("CRPS"). Dr. Resnick referred Gruhler to pain management.

Gruhler continued to have pain in her wrist following the fall. Dr. Mollano recommended that she use a stimulator and wrist splints.

Through November of 2012, Gruhler continued to complain of pain in her ankle and continued to wear the boot, although she

was told she did not need the boot.  Dr. Resnick told Gruhler to take off the boot and "to push through the pain."  Dr. Resnick believed that Gruhler's pain was due to CRPS because nothing was structurally wrong with her ankle.

An occupational therapist, Paul Bonzani, evaluated Gruhler's wrist pain in November of 2012.  He concluded that her pain suggested CRPS and planned a therapy program to control pain and increase her function.

Gruhler saw Dr. James Mirazita in December of 2012 for pain management related to her ankle.  Dr. Mirazita diagnosed myofascial pain syndrome and scheduled a right lumbar sympathetic block.  Dr. Resnick saw Gruhler in January of 2013 for reevaluation of her ankle.  Dr. Resnick noted that there was no structural cause for the pain Gruhler claimed.

Dr. Davis Clark evaluated Gruhler's back pain in January of 2013.  He found that Gruhler had tenderness at some spinal points but not others and that her range of motion in her legs and hips was limited.  Gruhler's neurological examination of her legs was normal.

Dr. Mirazita did nerve blocks in February and March of 2013, which improved Gruhler's pain level and mobility.  During his examinations between January and July of 2013, Dr. Mirazita found that Gruhler was not in acute distress, her neck and back ranges of motion were normal, no evidence of spasms, and no pain

4

due to facet joint disease. Her arm and leg ranges of motion were also normal, except for a reduced range of motion in her right ankle. Gruhler's ankle pain reduced to two out of ten by July of 2013.

Dr. Clark found minimal lumbar spine tenderness in April of 2013. During physical therapy, the therapist noted that Gruhler continued to be very limited in her functioning because of her "right ankle fracture." Dr. Mirazita noted that Gruhler had increased ankle pain with walking.

In September of 2014, Gruhler reported worsened ankle pain. Dr. Russell Brummett noted that Gruhler had a difficult time standing and walking but was in no acute distress, her cervical range of motion was intact, motor testing on her legs was normal and she was walking with a stable upright gait. Dr. Mollano diagnosed Gruhler with bilateral carpal tunnel syndrome in October of 2014.

Dr. Peter Loeser did a consultative examination of Gruhler on October 2, 2014. Based on Gruhler's records, Dr. Loeser noted early degenerative disease in the lumbar spine. He found on examination that Gruhler was in no apparent distress, had normal cervical range of motion, no tender points on spinal palpation, and no spasms. The examination of her thoracic spine was also normal. Gruhler had mild tenderness in the lower lumbar areas. Dr. Loeser found that Gruhler had normal range of

motion and strength in her arms and legs with no pain.  She had mild pain in her right ankle.  Dr. Loeser found that Gruhler had a normal ability to sit, stand, get on and off the examination table, squat, and walk.

Gruhler had an MRI of the lumbar spine the week after her examination with Dr. Loeser.  Dr. Brummett examined Gruhler in mid-October and found that the MRI indicated only mild degenerative changes.  He noted that it would be reasonable for Gruhler to try exercise and therapy, although Gruhler found it exacerbated her issues.  Dr. Brummett recommended chiropractic treatment and a physiatrist.

Dr. John MacEachran assessed Gruhler's functional capacity on October 21, 2014.  He found that Gruhler could do work at the light exertional level and could occasionally do postural activities.  Gruhler saw Dr. Sarah Glover on October 25, 2014, who found on examination that Gruhler was tender over lower back muscles but had normal strength in her arms and legs and her sensation was intact.  Dr. Glover noted that Gruhler's gait was antalgic.

After another nerve block, Gruhler saw Dr. Glover in November of 2014.  Dr. Glover noted that Gruhler was doing well, walking better, and was in no acute distress.  On examination, Dr. Glover found normal results.

Dr. Brummett asked Dr. Lewis to evaluate Gruhler because of low back problems. Based on his examination in November of 2014, Dr. Lewis thought that Gruhler fit the criteria for fibromyalgia. In December, Dr. Lewis noted that Gruhler had improved with manipulation and that the fibromyalgia tender points were much better.

Dr. Glover reviewed a bone scan in December of 2014 and found osteoporosis. In January of 2015, Dr. Glover completed a residual functional capacity questionnaire in which she noted that she had seen Gruhler three times, beginning in October of 2014. Dr. Glover found that Gruhler was limited in her ability to stand and walk in a work day, and in her ability to lift weight and use her hands for grasping and turning. Dr. Glover also thought that Gruhler would miss more than four work days each month.

Dr. Lewis examined Gruhler in January of 2015, the day after Dr. Glover completed the questionnaire. Dr. Lewis found that Gruhler had improved. Gruhler's subsequent medical records also generally show improvement and normal results on examination.

In March of 2015, Dr. Mollano found that Gruhler had tenderness in her right thumb and a positive test for carpal tunnel syndrome. Dr. Mollano also found that her right hand sensation and finger flexors and extensors were intact and that

7

she had no atrophy in her hands. Dr. Mollano recommended that she use a brace as needed for symptoms. When Gruhler reported a flare up of pain in her right foot after dancing at a wedding, Dr. Mirazita noted her reports and also noted a diagnosis of CRPS in October of 2015.

Gruhler testified at a hearing before an ALJ in January of 2016. She reported difficulty with sitting for more than fifteen minutes, difficulty with reaching and picking up objects, and problems with memory and concentration due to pain. She reported pain down the whole right side of her body and numbness in her hands and fingers.

A vocational expert also testified at the hearing. In response to the ALJ's questions, the vocational expert testified that Gruhler's past work as an inspector was at the light exertional level.

The ALJ found that Gruhler had severe impairments due to degenerative disc disease, right ankle fracture, osteoarthritis of her knees, right shoulder, and left hip. Despite those impairments, the ALJ found that Gruhler retained the functional capacity to do light work with limitations to occasionally doing postural activities. The ALJ found that Gruhler could return to her past work as an inspector. The Appeals Council denied Gruhler's request for review of the ALJ's decision.

Discussion

Gruhler moves to reverse the ALJ's decision. In support she contends that the ALJ failed to properly weigh Dr. Glover's opinion, erred in relying on the opinions of non-examining consultants, failed to consider her impairment due to Complex Regional Pain Syndrome ("CRPS"), and erred in failing to find her disabled under the Medical Vocational Guidelines. The Acting Commissioner moves to affirm.

A. Dr. Glover's Opinion

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that support or detract from the opinion. § 404.1527(c).

A "treating source" is a physician or other acceptable medical source who has provided "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." § 404.1527(a)(2). An "ongoing treatment relationship" exists "when the medical evidence establishes that [the claimant] see[s], or ha[s] seen the [physician] with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." Id. A treating physician's opinion is generally given more weight because they are likely to be "able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence." § 404.1527(c)(2).

If a treating physician's opinion is well-supported by objective medical evidence and not inconsistent with other medical evidence in the record, the ALJ will give the opinion controlling weight. Id. When the ALJ does not give a treating physician's opinion controlling weight, the ALJ will consider the length of the treatment relationship and the frequency of examinations along with the other factors used to assess all medical opinions. § 404.1527(c).

Dr. Glover is a primary care physician who first met with Gruhler on October 24, 2014, "to establish care" and to re-start Gruhler's medication for depression. Dr. Glover saw Gruhler

10

again on November 7, 2014, for a physical, and on December 2, 2014, for a follow up visit on the results of Gruhler's dexa scan for bone density.

On January 12, 2015, Dr. Glover completed a physical residual functional capacity questionnaire in which she noted that Gruhler's prognosis for improvement was good but that she could not do work at even the sedentary level, had very limited use of her hands, had pain that would interfere with her attention and concentration, and would be absent from work for more than four days each month. Dr. Glover stated that Gruhler's symptoms and limitations began in August of 2012, based on Gruhler's report.

The ALJ gave Dr. Glover's opinions in the questionnaire little weight. The ALJ explained that the opinions were based on only three office visits and conflicted with Dr. Glover's own statement that Gruhler had a good prognosis. The ALJ also found that Dr. Glover's opinions conflicted with the objective medical evidence, including normal neurological examination results, and noted that Dr. Glover appeared to base her opinions on Gruhler's subjective reports which were not supported by the record.

Gruhler faults the ALJ for noting that she had had only three visits with Dr. Glover. Gruhler argues that because Dr. Glover is a treating physician, her opinion should have been given greater weight than the opinions of the state agency

physicians who did not have a treating relationship with her.[1] She also contends that the ALJ ignored the record evidence available to Dr. Glover and that Dr. Glover's opinions were based on the record evidence, not on Gruhler's subjective complaints.

The ALJ properly considered the length of the treatment relationship and the frequency of visits in Gruhler's relationship with Dr. Glover. § 404.1527(c)(2)(i) & (ii). In addition, the ALJ did not evaluate the opinion based on only the length and frequency of the treatment relationship. The ALJ also noted the inconsistencies in Dr. Glover's opinions and the inconsistencies with Gruhler's medical record as a whole.

Dr. Glover provided opinions on functions that she does not appear to have assessed in the course of her three treatment visits with Gruhler, such as Gruhler's hand function and interference in her attention and concentration. Dr. Glover also provided no explanation of the source of her opinions in the questionnaire other than Gruhler's own reports and her observation that Gruhler was limping. Contrary to the

---

[1] There is no requirement that treating physician's opinions be given more weight that the opinions of state agency consultants. Instead, all medical evidence must be considered and weighed as provided in § 404.1527. An ALJ may rely on the opinion of a state agency consultant as medical opinion evidence. § 404.1527(e).

questionnaire opinions, Dr. Glover's treatment notes from her physical examination on October 24, 2014, show that Gruhler was in no acute distress, had no edema or discoloration in her extremities, had normal muscle strength, and intact sensations. The ALJ considered Dr. Glover's opinions in the questionnaire and appropriately gave them little weight.

B.  State Consultant Physician Opinions

Gruhler contends that the ALJ erred in relying on the opinions of consultant physicians, Dr. Loeser and Dr. MacEachran, because they did not review later medical evidence.[2] Gruhler cites an MRI of the lumbar spine done on October 7, 2014, "imaging of the wrists that later revealed bilateral carpal tunnel syndrome," and examinations that "confirm the presence of CRPS of the right ankle" as new evidence that Dr. Loeser and Dr. MacEachran did not review.

The opinion of a non-examining reviewing consultant that is based on "a significantly incomplete record" is not substantial evidence to support an ALJ's decision. Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007). An ALJ may rely on an opinion based on an incomplete record as long as any new

---

[2] Dr. Loeser examined Gruhler on October 2, 2014, and based his opinions on his examination, along with his review of her record. For that reason, Dr. Loeser was not a non-examining consultant.

13

evidence does not show a material change for the worse in the claimant's limitations. Giandomenico v. U.S. Social Security Admin., 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017). The ALJ bears the burden to determine and explain that any new evidence is not material. Id.

1. MRI of the Lumbar Spine

The ALJ explained in the decision that the MRI of the lumbar spine was assessed by Dr. Brummett who found only mild degenerative changes and recommended chiropractic treatment. Dr. Brummett also found normal range of motion and normal neurological results. For that reason, the ALJ concluded that the later MRI did not show a material change. Therefore, the ALJ properly explained why the MRI of the lumbar spine did not affect the completeness of the record.

2. Wrist

Both Dr. Loeser and Dr. MacEachern noted that Gruhler had injured her wrists and claimed disability because of it. Dr. Loeser wrote that Gruhler had a history of carpal tunnel syndrome and that she wore splints for that reasons. On examination, Dr. Loeser found that Gruhler had no abnormalities in her wrists, had normal range of motion without pain, and had no pain in the wrists with palpation. Dr. MacEachern relied on Dr. Loeser's examination in forming his opinion.

In support of her argument that the record includes new evidence to support her wrist impairment, Gruhler cites Dr. Mollano's treatment note from October 1, 2014. In his notes, Dr. Mollano states that "[t]wo views of each wrist reveal ulnar-neutral variance with left ulnar-shortening osteotomy plate visible at the distal ulna with decent joint spaces overall."[3] On examination, Dr. Mollano found tenderness in Gruhler's hands and a positive test for carpal tunnel syndrome. Dr. Mollano also found, however, that both hands had intact flexors and extensors, full wrist and forearm range of motion, and other normal results.

Dr. Mollano examined Gruhler on October 1, 2014, and Dr. Loeser examined her on October 2, 2014.[4] Both noted carpal tunnel syndrome and both otherwise found normal results on examination of Gruhler's wrists. Given that record, there is no new evidence to show that Gruhler's wrist impairments were materially worse than Dr. Loeser found in his examination.

---

[3] It is not clear whether this note refers to new x-rays or to x-rays done previously.

[4] Although Dr. Mollano's treatment preceded the consultant's opinions, apparently Dr. Loeser and Dr. MacEachern did not have Dr. Mollano's notes to review.

### 3. CRPS

Gruhler also contends that the consultant physicians failed to consider her impairment due to CRPS of the right ankle. As she acknowledges, however, the record reviewed by the consultant physicians included findings related to CRPS. Dr. Loeser also examined Gruhler's ankle and found a normal range of motion, no deformities or abnormalities, and no pain on palpation. Findings related to CRPS do not provide new evidence that post-dated the consultant opinions, and Gruhler does not suggest that naming the syndrome would change the results of Dr. Loeser's physical examination.

### 4. Result

The ALJ properly explained why the lumbar MRI results, which the consultant doctors did not review, did not show material worsening of Gruhler's impairments. Neither the wrist imaging nor findings related to CRPS presented new evidence of worsening impairments.

## C. ALJ's Consideration of CRPS

Gruhler contends that the ALJ erred in failing to consider her CRPS of the right ankle and contends that the ALJ should have found CRPS to be a severe medically determinable impairment

16

at step two.[5] In support, she cites Social Security Ruling 03-2p, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Distrophy Syndrome/Complex Regional Pain Syndrome to show that transient pain symptoms are consistent with CRPS and that CRPS can be a severe medically determinable impairment. Even if the ALJ erred in failing to find that CRPS of Gruhler's right ankle was a severe medically determinable impairment at step two, any error is harmless as long as the ALJ considered that impairment in assessing Gruhler's residual functional capacity at step four. See, e.g., Delia v. Comm'r of Social Security, 433 Fed. Appx. 885, 887 (11th Cir. 2011); Fortin v. Colvin, 2017 WL 1217117, at *10 (D. Mass. Mar. 31, 2017).

The ALJ did not ignore Gruhler's right ankle pain and CRPS. Instead, the ALJ found at step two that Gruhler's history of right ankle fracture was a severe impairment. In the context of assessing her residual functional capacity, the ALJ noted Dr. Resnick's assessment of CRPS in November of 2012. The ALJ relied on the opinions of Dr. Loeser and Dr. MacEachern that

---

[5] In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520. The steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; (3) determining whether the impairment meets or equals a listed impairment; (4) assessing the claimant's residual functional capacity and her ability to do past relevant work; and (5) determining whether the claimant can make an adjustment to other work. § 404.1520(a).

17

Gruhler could do light work with certain postural limitations despite her right ankle pain and CRPS.

Therefore, Gruhler has not shown that the ALJ erred in failing to identify CRPS as a severe medical determinable impairment or that any error would require reversal.

D.  Medical-Vocational Guidelines

The Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P, provide a "streamlined method" for determining whether a claimant who meets certain criteria is disabled.  Heggarty v. Sullivan, 947 F. 2d 990, 995 (1st Cir. 1991); Holmes v. Colvin, 2016 WL 7410775, at *11 (D. Mass. Dec. 22, 2016).  Pertinent to this case, Gruhler contends that she should have been found to be disabled under section 202.06 because she is only capable of sedentary work, is of advanced age, and lacks transferable skills.  The ALJ, however, found that she is capable of light work.  Therefore, section 202.06 does not apply.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 13) is denied.  The Acting Commissioner's motion to affirm (document no. 15) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

December 20, 2017

cc: Mathew Beausoleil, Esq.
　　Terry L. Ollila, Esq.
　　T. David Plourde, Esq.
　　D. Lance Tillinghast, Esq.